**Dated: August 6, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-11494-JDL |
| Integrity Directional Services, LLC., | ) | Ch. 7 |
| | ) | (Involuntary) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Douglas N. Gould, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 19-01104-JDL |
| | ) | |
| Falcon Strategic Partners IV, LP | ) | |
| A Delaware Limited Partnership | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction**

In this adversary proceeding, the Plaintiff Douglas N. Gould (the "Trustee"), in his

capacity as trustee of the Chapter 7 bankruptcy estate of Integrity Directional Services,

LLC ("Debtor"), seeks to avoid as a preferential transfer under 11 U.S.C. § 547(c)(1)[1] a "blanket" security interest in Debtor's assets claimed by Defendant Falcon Strategic Partners IV, LP ("Creditor" or "Falcon") which was given to secure a promissory note in the face amount of $18 million. The security interest attached and was perfected within 90 days of the Debtor's filing bankruptcy, fifty-one (51) days after the execution of the promissory note and thirty-two (32) days after the last advance of $1.5 million under the note. The Creditor argues that the Trustee cannot avoid the security interest to the extent of the $1.5 million advance because (1) a condition precedent placed on the advance which was required to be performed by the Debtor and a third-party (a first-priority secured creditor) delayed the perfection of Falcon's security interest, thus making its' perfection timely and (2) the transfer (perfection) was "substantially contemporaneous" with the $1.5 million advance. The matter is before the Court on the Trustee's *Motion for Summary Judgment* ("Motion") [Adv. Doc. 28]; Falcon's *Response to Motion for Summary Judgment* ("Response") [Adv. Doc. 29] and the Trustee's *Reply to Defendant's Response to Plaintiff's Motion For Summary Judgment* ("Reply") [Adv. Doc. 32].

## II. Jurisdiction

The Court has jurisdiction over this matter. Proceedings to avoid and recover preferential transfers are core proceedings under 28 U.S.C. § 157(b)(2)(F). This Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local Rule LCvR 81.4 entered by the United States District Court for the Western District of Oklahoma. Further, both parties have consented to the entry by the Bankruptcy Court of

---

[1]Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

any final orders and judgments pursuant to Fed.R Bankr.P. 7008 and 7012(b).[2]

### III. Facts

The determination of whether a motion for summary judgment is to be granted is based upon whether there are any material issues of fact which are undisputed and entitles the moving party to judgment as a matter of law.[3]  The Court finds the following facts to be undisputed:

1. On April 15, 2019, an involuntary petition was filed against Integrity Directional Services, Inc. ("the Debtor").[4]  On May 9, 2019, the Order for Relief was entered.

2. On May 10, 2019, the Plaintiff, Douglas N. Gould, was appointed Chapter 7 Trustee in the above-captioned Chapter 7 case, and was authorized to avoid and recover preferential transfers pursuant to 11 U.S.C. § 547.

3. Defendant Falcon Strategic Partners IV, L.P. is a Delaware Limited Partnership and a creditor in the underlying Chapter 7 case.

4. Since 2017, Defendant Falcon claims it has loaned Debtor over $20 million, which may be evidenced by several promissory notes (the "Notes"), to wit:

   a. Senior promissory note dated June 2, 2017, in the original amount of $1,500,000 with contract interest accruing initially at a rate of 10% per

---

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

[3] In its Response to the Trustee's Motion, Defendant Falcon "agrees that the facts stated in the Trustee's Motion, ¶ ¶ 1-9 are not in dispute." [Adv. Doc. 29].

[4] The undisputed facts show the case was filed on April 25, 2019.  The actual date of filing was April 15, 2019. [Case # 19-11494, Doc. 1].

annum and having a maturity date of September 12, 2021;

b. Amended and Restated Promissory Note dated September 20, 2017 (amending the Senior Promissory Note dated August 31, 2017), in the original principal amount of $2,500,000 with contract interest accruing initially at a rate of 10% per annum and having a maturity date of August 31, 2020;

c. Senior Promissory Note dated April 20, 2018, in the original principal amount of $5 million with contract interest accruing at a rate of 10% per annum and having a maturity date of September 12, 2021;

d. Senior Promissory Note dated August 14, 2018, in the original principal amount of $3 million with contract interest accruing at a rate of 20% per annum and having a maturity date of September 12, 2021;

e. Senior Promissory Note dated October 9, 2018, in the original principal amount of $6,167,507.77 (under which $5 million was loaned) with contract interest accruing initially at a rate of 10% per annum and having a maturity date of September 12, 2021;

f. Senior Promissory Note dated December 21, 2018, in the original principal amount of $7,560,137.46 (under which $2,200,000 was loaned) having a 3x liquidation preference in lieu of interest payments and having a maturity date of September 12, 2021; and

g. Senior Promissory Note dated January 16, 2019, in the original principal amount of $18 million (under which $3,500,000 was loaned) and having a 3x liquidation preference in lieu of interest payments and having a

4

maturity date of September 12, 2021.

5. Falcon further claims that the Notes are secured by a first priority lien and security interest in all of the Debtor's assets, except Debtor's accounts receivables against which Falcon holds a second priority lien and security interest, said security interests having been created and perfected by, among other things:

a. Security Agreement dated March 8, 2019, given by the Debtor in favor of Falcon and covering all of the Debtor's "Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Disbursements, Investment property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles" (together, the "Collateral");

b. UCC-1 Financing Statements covering the Collateral and filed in the UCC records with the Office of the Delaware Secretary of State; and

c. Amended and Restated Subordination Agreement, dated January 16, 2019, by and between certain "Senior Creditors" (as that term is defined therein), including Falcon, and certain "Subordinated Creditors" (as that term is defined therein), including Boyd Hodges Holdings, LLC.

6. A critical part of the consideration for the 2019 note was Debtor's covenant to grant Falcon a security interest. The January 2019 Senior Promissory Note provided as follows:

8(e) Grant of Security Interest.

(i) The Company shall use its commercially reasonable efforts to cause to, within 30 days of the date hereof, amend that certain Intercreditor and Subordination Agreement, dated on or about January 20, 2016, by and among TBK Bank, SSB ("Triumph"), Falcon Strategic Investments IV, LP ("Falcon") and the Company.

5

(ii) Within 30 days of the date hereof, the Company will grant Falcon a security interest in substantially all assets of the Company, which shall include a first priority security interest in all assets not encumbered by the security interest granted to Triumph.

7. The first advance under the 2019 Note was in the amount of $2 million on January 16, 2019.

8. The second advance under the 2019 note was in the amount of $1.5 million on February 4, 2019. The Debtor's deadline of February 15, 2019, to deliver the security agreement to Falcon was within 11 days of the second advance. The delivery of the security agreement did not occur on February 15, 2019 as agreed.

9. Debtor failed to cause Triumph to deliver the required amendment, and Falcon did not procure the same until about March 8, 2019. In the First Amended Intercreditor and Subordination Agreement, Triumph agreed as follows:

TBK hereby subordinates its security interest in the Equipment to the security interest of Subordinating Creditor in the Equipment and TBK agrees that its security interest, whenever granted and/or perfected in the Equipment will be inferior, junior and secondary to the security interests held by Subordinating Creditor in the equipment.

10. The March 8, 2019, security interest taken by Falcon constitutes a transfer of the Debtor to or for the benefit of Defendant Falcon, who was a creditor of the Debtor.

11. The Debtor was presumptively insolvent at the time Falcon took its security interest.

12. The March 8, 2019, security interest taken by Falcon occurred on or within 90 days before the Petition Date.

13. By virtue of Falcon taking the March 8, 2019, security interest, it received more

than it would have received if the Debtor's estate had been liquidated under Chapter 7, the taking of the security interest had not occurred, and Defendant Falcon had received payments to the extent permitted by the Bankruptcy Code.

### IV. Summary Judgment Standard

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides the court "shall grant summary judgment if the movant shows that there is no genuine dispute as a material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

"A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood,* 671 F.3d 564, 569 (6th Cir. 2012). Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the nonmoving party. *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.,* 938 B.R. 1105, 1110 (10th Cir. 1991); *Harris v. Beneficial Oklahoma, Inc. (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 1997). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").

The party seeking summary judgment carries the initial burden of demonstrating the absence of a genuine issue of material fact. The movant may carry this initial burden by showing "that there is an absence of evidence to support the nonmoving party's case."

7

*Celotex Corp. v.Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).  If the moving party carries this initial burden, "the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993).

## V. Discussion

### A. Statutory Elements of a Preferential Transfer.

Section § 547(b) provides the elements of an action to avoid a preferential transfer include: (1) the transfer of an interest of the debtor in property; (2) on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within 90 days prior to the filing of the bankruptcy petition; (5) that benefits a creditor; and (6) enables the creditor to receive a larger share of the estate if the transfer had not been made. 11 U.S.C. § 547(b).  The trustee bears the burden of proving the avoidability of the transfer under § 547(b) by a preponderance of the evidence. 11 U.S.C. § 547(g); See *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654 (1991). The Court need not analyze whether the elements of a preferential transfer exist in the present case because Falcon has conceded that "[t]here is no dispute that the issuance of the Security Agreement within 90 days of Debtor's bankruptcy filing satisfies the elements of a preference under § 547(b)." [Response, Adv. Doc. 29, ¶ 20].

### B. Section 547(c)(1) Exceptions to a Preferential Transfer.

Having determined that the Trustee did satisfy the requirements of § 547(b), the burden shifts to Falcon to show that the transfer should not be avoided as a preference.

11 U.S.C. § 547(g).[5]  Exceptions to a trustee's powers of avoidance under § 547(b) are found in § 547(c), and Falcon argues that the transfer fits within the first exception listed therein. That section provides:

> (c) The trustee may not avoid under this section a transfer –
>
>> (1) to the extent that such transfer was –
>>
>>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>>
>>> (B) in fact a substantially contemporaneous exchange.

Thus, a transfer may be insulated from attack by a trustee if (1) a creditor extends new value to the debtor, (2) both parties intended the transfer to be a contemporaneous exchange, and (3) the transfer was in fact a substantially contemporaneous exchange. 5 *Collier on Bankruptcy* ¶ 547.04 [1], at 547-43-44 (Alan N. Resnick & Henry J. Sommer eds. [16th Ed.]

There is no dispute the element of "new value" was given by Falcon.  Section 547 (a)(2) defines "new value" as "money or money's worth in goods, services, or *new credit*." (Emphasis added).  In this case, it is not disputed that pursuant to the January 16, 2019, Senior Promissory Note Falcon extended credit and made advances thereon to the Debtor of $2 million on January 16, 2019 and $1.5 million on February 4, 2019, and secured the same by the execution of the Security Agreement and perfection of its security interest by

---

[5] Section 547(g) provides: For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the non-avoidability of a transfer under subsection (c) of this section. 11 U.S.C. § 547(g).

the filing of a Uniform Commercial Code Financing Statement, both on March 8, 2019. Nor

does it appear to be any dispute that Falcon and the Debtor intended that Falcon's

advances under the Note be contemporaneous with the taking of a security interest in the

Debtor's assets. The January 2019 Senior Promissory Note provided as follows:

> 8(e) Grant of Security Interest
>
> (i) The Company shall use its commercially reasonable efforts
> to cause to, within 30 days of the date hereof, amend that
> certain Intercreditor and Subordination Agreement, dated on
> or about January 20, 2016, by and among TBK Bank, SSB
> ("Triumph"), Falcon Strategic Investments IV, LP ("Falcon")
> and the Company.
>
> (ii) Within 30 days of the date hereof, the Company will grant
> Falcon a security interest in substantially all assets of the
> Company, which shall include a first priority security interest in
> all assets not encumbered by the security interest granted to
> Triumph.

The Promissory Note clearly reflected Falcon's intent to have advances made under the

January 16, 2019 Note to be subject to its security interest within 30 days. If things had

gone as planned, Falcon would have obtained an executed Security Agreement on or prior

to February 15, within eleven (11) days of the $1.5 million second advance which is at

issue in the case.

The record also reflects an *Affidavit* of Falcon's general partner stating that "Falcon

*intended* that the value advanced under the 2019 Note be contemporaneous with the

granting of security interest." (Emphasis added) [Adv. Doc. 29-2, ¶ 11]. Based on the

record before the Court for ruling on summary judgment, the uncontradicted evidence is

that the parties intended the transaction to be contemporaneous. On the same day that

Falcon obtained the required subordination agreement from TBK Bank, it accepted the

10

Security Agreement and perfected its interest by filing its Financing Statement.  The Trustee does not argue otherwise.  Based on the foregoing, the Court finds that for summary judgment purposes Falcon has met its burden to show that the parties intended the transfer to be contemporaneous.  But intent alone is insufficient to establish a defense under § 547(c)(1).  Falcon also has the burden of showing the transfer was "in fact" substantially contemporaneous.

The second part of the substantially contemporaneous test–was the transfer in fact substantially contemporaneous–is not so straightforward.  The Bankruptcy Code does not define "substantially contemporaneous", which has led to a great deal of discussion in the case law and literature and is the principal issue before this Court.  In fact, application of the contemporaneous transfer or exchange exception, specific to the transfer of non-purchase money security interests, has resulted in a split among the circuits.  The majority view, adopted by the Eighth, Ninth, and Eleventh Circuits holds that the substantially contemporaneous transfer exception is not limited by the 30 day time period provided in § 547(e)(2).[6]  Section 547(e)(2) provides as follows:

> (2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made –
>
>> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is

_____

[6] Prior to 2005 the "safe harbor" time under § 547(e)(2) was 10 days, and most of the decisions addressing the apparent conflict between § 547(c)(1) and (e)(2) involve that time constraint.  BAPCPA expanded the time under § 547(e)(2) to 30 days in an attempt to reconcile that section with the "safe harbor" provisions of the Uniform Commercial Code which gives secured creditors automatic retroactive perfection on certain transactions. BAPCPA left § 547(c)(1) unchanged. Some courts in adopting the "broad" view of § 547(c)(1) since the BAPCPA amendment have assumed that Congress was aware of the debate of the definition of "substantially contemporaneous" but elected to leave that language as is.  If Congress had intended for 30 days to be a definitive deadline, those courts assume that Congress would have clarified § 547(c)(1) when revising the rest of § 547. See *In re Kerst*, 347 B.R. 418 (Bankr. D. Colo. 2006).

> perfected at, or within 30 days after, such time
> except as provided in subsection (c)(3)(B);
>
> (B) at the time such transfer is perfected, if such transfer
> is perfected after such 30 days;

****

Under this "broad", majority view, § 547(e)(2) provides a 30-day window during which the parties may perfect a security interest and treat the perfection as if it occurred at the time of the initial transfer or exchange, i.e. the grant of the security interest. The majority view does not apply § 547(e)(2) to create an absolute, thirty-day deadline for when the perfection of a security interest can be deemed substantially contemporaneous under § 547(c)(1). These circuit courts argue that Congress, in using the broad phrase "substantially contemporaneous," intended a flexible, case-by-case approach to the application of § 547(c)(1), not to be limited by § 547(e)(2). It is this majority, flexible approach that Falcon urges the Court to apply in the present case.

On the other hand, the First and Sixth Circuits have held that just as courts have limited the application of the contemporaneous exchange exception with regards to the perfection of a purchase money security interest, courts should similarly limit the use of the contemporaneous exchange exception in the context of non-purchase money security interest as in the present case. Under this minority or "narrow" view, courts find that Congress drafted § 547(e)(2) to establish the specific window of time in which security interests could be perfected and still be deemed to have occurred at the time of transfer.

The Tenth Circuit has not yet spoken on this issue, but the majority of district and bankruptcy courts within the Circuit have sided with the majority view of adopting a flexible, case specific analysis of what constitutes a contemporaneous transfer in fact. See e.g., *In*

12

*re Kerst,* 347 B.R. 418 (Bankr. D. Colo. 2006); *Morris v. Chisholm Trail State Bank (In re Stephens)*, 242 B.R. 508 (D. Kan. 1999) (citing *Dorholt v. Linquist (In re Dorholt, Inc),* 239 B.R. 521 (8th Cir. BAP 1999), *aff'd,* 224 F.3d 871 (8th Cir. 2000) (stating, "Congress' use of the phrase 'substantially contemporaneous' indicates that a flexible standard was intended rather than a specific time limit.")); *Rutledge v. First National Bank of Sallisaw, Oklahoma (In re Carson*), 119 B.R. 264 (Bankr. E.D. Okla.1990); *Telecash Industries, Inc. v. Universal Assets (In re Telecash Industries)*,104  B.R. 401, 404 (Bankr. D. Utah 1989) ("This court declines to follow the reasoning of the Court of Appeals in *Arnett* and does not believe that § 547(e)(2), which prescribes when a transfer occurs for purposes of the preference section, requires *sub silentio* a ten-day limitation in the contemporaneous exchange exception.")

### C. The Narrow Application of § 547(c)(1) and *In re Arnett.*

The seminal, most cited case in support of the "narrow" view is the Sixth Circuit case of *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir.1984) wherein the court held that in a non-purchase money security interest transaction the time line provided in § 547(e)(2) to be the applicable definition of "substantially contemporaneous." *Id.* at 364.  There, the creditor gave the debtor's a consolidation loan in exchange for a lien on the debtor's motor vehicle, which was at the time subject to a prior perfected lien held by another creditor.  The consolidation loan provided sufficient funds to pay off the existing security interest and the creditor sent a check to the pre-existing creditor to pay off the balance of the prior lien with a request to release the lien and forward the certificate of title to the creditor.  Due to holiday and mail delays, the pre-existing lien holder did not release

13

its lien or send the certificate of title to the creditor until 30 days after the initial granting of the security interest.  The creditor did not file its lien with the Department of Motor Vehicles perfecting the lien until 33 days after it had taken the security interest.  The bankruptcy court held that because of the unforeseen delays the taking of a security interest and the perfection of the lien were contemporaneous and not avoidable as a preferential transfer.

Both the creditor and the debtor agreed, as in this case, that the elements of a preferential transfer under § 547(b) had been met.  Both sides agreed, as this Court has found, that the transaction was *intended* to be contemporaneous, satisfying the first prong of § 547c)(1).  As here, the Circuit stated that "[t]he sole issue...is whether a delay of 33 days in perfection of a security interest is a 'substantially contemporaneous exchange' under 11 U.S.C. § 547(c)(1), thus excepted from the trustee's avoidance powers." *Id.*, at 359.

The Circuit Court reversed the bankruptcy court by concluding that the 33 day delay in perfection prevented the transfer from being substantially contemporaneous and avoided the security interest as preferential.  In doing so, the Court relied upon the rules of statutory construction, including that the "primary function of the courts in construing legislation is to effectuate the legislative intent." *Id.*, at 360. The Court believed that the intent of Congress in § 547(c)(1) was protection of the creditor "in the exchange of goods or other 'value' for a check." *Id.*, at 361.  The Court also found that to not test the transfer under the time limits imposed by § 547(e)(2) would negate that section and undermine § 547(e)(2)'s short time line, which was to discourage creditors "from waiting until the debtor's financial troubles became all-too-manifest before recording security interests." *Id.*, at 363.  The

14

*Arnett* Court was also concerned that adopting a broad reading of § 547(c)(1) and permitting a review of the facts and circumstances of each transaction would create "evidentiary problems" and would invite litigation over whether the exchange of the security interest is "in fact substantially contemporaneous." *Id.*

Other circuits following *Arnett* also relied on statutory construction, including legislative intent.  In *Collins v. Greater Atlantic Mortgage Corp. (In re Lazarus)*, 478 F.3d 12 (1st Cir. 2007) the court explained that Congress enacted the 10-day (now 30-day) period contained in § 547(e)(2) out of concern that mortgages and other security interests should be recorded *"within a reasonably brief and predefined period."* *Id.* at 18 (emphasis in original). This provision was an attempt to "combat secret liens and protect those that might lend in ignorance of the mortgage." *Id.* The court reasoned that permitting the creditor to protect its lien without recording it within that time would undermine this attempt. The First Circuit in *Lazarus* also noted that while the § 547(e)(2) was a "mechanical deadline," it was Congress*'s* choice to establish such a deadline, and it has the benefit of "being specific and avoiding litigation.*" Id.*; See *Arnett*, 731 F.2d at 363 ("the evidentiary problems inherent in an expansive reading of § 547(c)(1) embody a Pandora's box of evils.").

Both *Arnett* and *Lazarus* were prescient with regard to the absence of a definite time period being the source of endless litigation.  This Court shares that concern.  A flexible, case-by-case determination of contemporaneous exchange might better protect the intentions of the actors, but at the substantial cost of increased litigation.  It is a legitimate concern of the Court that adoption of a flexible standard of "substantially

contemporaneous", rather than one with a statutorily imposed time frame, results in essentially results-oriented decision-making without predictability.

If this Court were to adopt the narrow, or *Arnett*, approach, summary judgment in favor of the Trustee must be granted. Whether one views the time between the grant of the credit by Falcon on January 16, 2019, and the Debtor's granting of the security interest (and perfection of that interest) on March 8, 2019, a time period of fifty-one (51) days or between the last loan advance by Falcon on February 4, 2019, and the taking and perfection of its security interest on March 8, 2019, a period of thirty-two (32) days, Falcon is outside the 30 days prescribed by § 547(e)(2).

### D. **The Flexible, and the Majority, Application of § 547(c)(1).**

The majority of the circuit courts–the Eighth, Ninth and Eleventh–have adopted a broad application of the substantially contemporaneous exception. Their approach allows the use of § 547(c)(1) to protect security interests perfected outside the time restrictions delineated in § 547(e)(2).

The first Court of Appeals decision to address the interplay between §§ 547(c)(1) and 547(e)(2) following the decision in *Arnett* was the Seventh Circuit in *Pine Top Insurance Co. v. Bank of America National Trust & Savings Association,* 969 F.2d 321 (7th Cir.1992) which became the seminal case holding that the determination of "substantially contemporaneous" was intended to be a flexible concept requiring a case-by-case inquiry into all relevant circumstances surrounding an allegedly preferential transfer.[7] *Id.*, at 328.

---

[7] Interestingly, *Pine Top* was not decided under bankruptcy law and did not involve the perfection of security interest. *Pine Top* dealt with whether a liquidator of an insurance company could recover transfers made just before the insurance company entered bankruptcy. In *Pine Top,* the court looked to bankruptcy law for guidance and in doing so rejected the *Arnett* court's approach.

The Seventh Circuit in *Pine Top* listed the "length of delay, reason for delay, nature of the transaction, intentions of the parties and possible risk of fraud" as "relevant circumstances" in determining whether a transfer was in fact substantially contemporaneous. *Id.*  The majority of the circuits as well as the majority of district and bankruptcy courts have adopted the *Pine Top* broad application of the "substantially contemporaneous" exception which allows use of § 547(c)(1) to protect security interests perfected outside the 30-day time restriction of § 547e(2).  In fact, the First Circuit decision in *Lazarus* in 2007 is the only Circuit decision to follow *Arnett* decided in 1984. It is the flexible test of *Pine Top* which Falcon asserts should be employed in the case before this Court.

One rationale for the flexible approach includes that "Congress knew how to adopt a specific time limit; it did so in the purchase money security interest exception, § 547 (c)(3)" which protects from the trustee*'s* avoidance powers any purchase money security interest perfected within 30 days of it being granted.  *In re Dorholt, Inc.,* 224 F.3d 871, 874 (8ᵗʰ Cir. 2000). Instead, Congress "chose a less rigid standard for § 547(c)(1), no doubt because that provision goes to a wider variety of loans and credit transactions." *Id.*

Similarly, in *Kerst*, supra., the Colorado Bankruptcy Court pointed out the difference between the nature of a purchase and a non-purchase security interest required different time limits on the transactions.  In the purchase money situation the creditor controls when the debtor can take possession of the collateral, and the creditor is also by law elevated to priority over prior non-purchase lenders.  The purchase money lender is appropriately required to act quickly if it wishes to protect its priority status. In the non-purchase transaction the lender lacks this control over collateral and lacks elevated status in priority, therefore more flexibility should be permitted. 347 B.R. at 428.

The majority view rejects the minority's argument that § 547(e)(2) would be negated or serve no purpose if the creditor were permitted to shelter under an expansive interpretation of § 547(c)(1).  The majority points out that § 547(e)(2) only "defines *when* a transfer is made for purposes of section 547." *In re Dorholt,* 224 F.3d at 874.  On the other hand, § 547(c)(1) "does not fix or move the date the transfer of an interest was made .... Instead, it asks only whether the transfer was meant to be a contemporaneous exchange for new value and, if so, whether it was 'in fact a substantially contemporaneous exchange.'" *Gordon v. Novastar Mortgage, Inc. (In re Hedrick)*, 524 F.3d 1175, 1189 (11th Cir. 2008).  Thus, defining when a transfer takes place is quite different from defining when a transfer can be deemed substantially contemporaneous so as to provide protection from avoidance. *Dorholt*, 224 F.3d at 874. "Reading the two provisions to mean exactly what they say does not negate the one of them, and there is no 'hopeless conflict', intended or otherwise." *Hedrick*, 524 F.3d at 1188.

Those cases employing the flexible approach have considered the reasons why the creditor delayed in recording the security interest and have largely required a short delay and a reasonable explanation for the delay before making a finding that the transfer was in fact substantially contemporaneous. See *In re Stephens*, 242 B.R. 508, 511 (D. Kan. 1999) (fourteen-day delay in perfecting lien on motor vehicle, which was "due to factors beyond the control the bank" was substantially contemporaneous with distribution of loan proceeds); *Kerst*, supra. (holding that exchange was in fact substantially contemporaneous where a forty-seven day delay in perfecting security interest vehicle was not within control of the lien holder and was caused by prior creditor failing to release prior lien for thirty-eight days); *Dorholt*, supra.(delay of sixteen days between execution of security agreement and

18

perfection substantially contemporaneous); *In re Marino*, 193 B.R. 907 (9th Cir. BAP 1996) (fourteen days acceptable); *But see In re Vatnsdal*, 139 B.R. 472 (Bankr. D. N.D. 1991) (delay of eleven months in recording mortgage "cannot be regarded as 'substantially contemporaneous'"); *Anstine v. Centex Home Equity Co., LLC (In re Pepper)*, 339 B.R. 756 (10th Cir. BAP 2006) (affirming bankruptcy court's holding that exchange was not substantially contemporaneous due to delayed seven months between disbursement of loan proceeds/execution of the deed and recording of the deed); *In re Messamore,* 250 B.R. 913 (Bankr. S.D. Ill. 2000) (finding § 547(c)(1) defense not established where bank offered no explanation for a delay of fifty days in perfecting title to mobile home); *Payne v. Clarendon National Insurance Co. (In re Sunset Sales, Inc.)*, 220 B.R. 1005 (10th Cir. BAP 1998), *aff'd,* 195 F.3d 568 (10th Cir. 1990) (transfer made seven weeks after the tender of new value was not "in fact" a substantially contemporaneous exchange).

This Court also notes that most of the cases employing the flexible approach and denominating the transaction as substantially contemporaneous even though outside the § 547(e)(2) time period did so when the time was 10 days.  Given that short, rigid time constraint, it is understandable that courts would be inclined to allow some flexibility.  It seems to this Court, however, that it is more difficult for courts to find perfection under the longer and more generous 30 days allowed under the BAPCPA amendment to be "substantially contemporaneous" with the transfer itself.

Falcon acknowledges the delay in securing and perfecting its loan but claims the delay is attributable to the Debtor's failure to have TBK execute the required Intercreditor and Subordination Agreement "despite [Falcons] best efforts to procure the same until

March 8, 2019." [Adv. Doc. 29, ¶16].  Obtaining the subordination agreement from TBK may have been a condition precedent to Falcon making advances on the loan, but the Court fails to see, and as pointed out by the Trustee, why the delay in obtaining the subordination agreement was an impediment for Falcon to obtain and perfect its security interest before advancing $3.5 million to the Debtor.  Indeed, is not uncommon for a lender to obtain and perfect a security interest prior to making any extension of credit.  When a secured creditor  files its financing statement either before or at the same time as the execution of the security agreement, the transfer of a security interest cannot be a preference since the transfer has occurred when the credit was extended–there is no antecedent debt.

In its Response, Falcon cites *Kerst, supra.,* as authority for another party causing a delay as supportive of Falcon's position that it couldn't perfect its security interest until it obtained TBK's agreement to subordinate it's a prior security interest.  The Court views *Kerst* as inapposite.  In *Kerst* the creditor was making a purchase money loan to the Debtor secured by a motor vehicle.  The loan was to pay off the holder of a prior perfected security interest in the vehicle.  That security interest was perfected by the prior creditor holding the certificate of title to the automobile.  After being paid, the prior creditor held onto the certificate of title to the vehicle and failed to issue a lien release for 38 days after it cashed the debtor's lender*'s* check.  There, it was necessary for the new lender to advance the funds to pay off the prior lien holder in order to get the certificate of title and the lien release, and it was impossible for the new lender to perfect it security interest without the certificate of title.  That situation is far removed from the situation here where Falcon could have obtained the security agreement and perfected its interest without first obtaining the

20

subordination agreement, waiting only until it received the agreement before advancing the funds. It appears to the Court that the decision to wait 51 days between the execution of the Promissory Note in perfecting the security interest was solely that of Falcon.

### VI. Conclusion

If pressed to decide between the bright-line, *Arnett* test adopted by the First and Sixth Circuit Courts of Appeals or the majority, flexible approach espoused by the Eighth, Ninth and Eleventh Circuits, the Court is inclined to adopt the more flexible approach, though the Court has misgivings about that choice. The Court does not, however, believe it need take a definitive stand at this summary judgment stage of the litigation. The Court believes that in such a controversial area of the law it should have before it as much of the facts and argument as possible. The Court notes that even applying the flexible approach, Falcon is perilously close to the precipice of summary judgment. It may well be that after a thorough airing of all the facts and circumstances at an evidentiary hearing and argument, that whichever test is applied the result would be the same. That being said, in such a highly debated area of the law and one presented to this Court for the first time, the Court finds that the granting of summary judgment to the Trustee without a fuller exposition of the facts and argument is inappropriate. This is one of the circumstances when "[a] trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing." *United States v. Certain Real and Personal Property*, 943 F.2d 1292 (11th Cir. 1991). Accordingly,

**IT IS ORDERED** that the Trustee's *Motion for Summary Judgment* [Adv. Doc. 28] is hereby **Denied,** and the matter shall proceed to trial as scheduled on August 26, 2020.

# # #